UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON MARIE DOWNS,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 1:15-cv-11240

DISTRICT JUDGE ROBERT CLELAND
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGEMENT
(Docs. 14, 15)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that Plaintiff's claim was tainted and she was prejudiced by the Commissioner's use of an erroneous onset date. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 14) be **GRANTED** and that the Commissioner's Motion for Summary Judgment (Doc. 15) be **DENIED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401-34 and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq*. (Doc. 3.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 15.)

On April 21, 2009, Plaintiff Shannon Downs filed a claim for DIB and SSI, alleging a disability onset date of July 19, 2006. (Tr. 137, 139.) Plaintiff's claim proceeded to a hearing before Administrative Law Judge ("ALJ") Joanne E. Adamczyk on April 15, 2011. (Tr. 87-133.) On June 22, 2011, ALJ Adamczyk denied Plaintiff's claim. (Tr. 134-51.) Plaintiff withdrew her request for review by the Appeals Council on June 6, 2012. (Tr. 251.)

On May 9, 2012, Plaintiff filed the present claim for DIB and SSI, alleging that she became disabled on April 30, 2007. (Doc. 12; Tr. 239-40.) Plaintiff later amended the onset date to June 23, 2011 in her pre-hearing brief. (Tr. 325.) Plaintiff's initial claim was denied on October 17, 2012. (Tr. 186-87), and Plaintiff requested a hearing. (Tr. 199.) She testified before Administrative Law Judge ("ALJ") Kevin J. Detherage on September 12, 2013. (Tr. 30-86.) On September 27, 2013, the ALJ denied Downs' claim. (Tr. 10-24.) The ALJ's decision became the Commissioner's final decision on January 30, 2015, when the Appeals council denied Plaintiff's request for review. (Tr. 1-4); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On April 1, 2015, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Pl compl., Doc. 1.)

**B.     Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id*. (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical

>or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

Following the five step analysis, the ALJ found Plaintiff was not disabled under the Act. At Step One, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since the alleged onset date of April 30, 2007. (Tr. 12.) At Step Two, the ALJ found Plaintiff had the following severe impairments: "pain due to cervical and lumbar spine degenerative disc disease, asthma, bipolar disorder, anxiety disorder, attention-deficit hyperactivity disorder (ADHD), and substance abuse disorder." (Tr. 13.) At Step Three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 18.) The ALJ then found that Downs had the residual functional capacity ("RFC") to perform sedentary work

> except she can perform simple, routine, and repetitive work. She should sit or stand at will provided she be not off task more than 9% of the work period. She should never operate foot controls but can occasionally stop, kneel, crouch, or crawl. She can never climb ladders, ropes or scaffold [sic] and occasionally climb ramps or stairs. She should not overhead reach. She should not have concentrated exposure to dust, fumes, gases, odors, or poorly ventilated areas. She should not perform repetitive rotation, extension or flexing of the neck. She should avoid exposure to extreme cold, heat or humidity. She should avoid exposure to hazards such as heights or machinery with moving parts. She should not perform production rate pace work and have only occasional changes in a routine workplace setting. She should have occasional contact with coworkers or supervisors and no contact with the public. She is likely to be absent from work one day per month.

(Tr. 15.) At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 22.) At Step Five, the ALJ found that a significant number of jobs existed which Downs could perform despite her limitations. (*Id.*) The ALJ also found that Plaintiff was 35 and therefore a younger individual (age 18-44) as of the alleged onset date. (*Id.*) As a result, the ALJ found Plaintiff is not disabled under the Act. (Tr. 23.)

**E.     Administrative Record**

In her initial application, Plaintiff alleged that she suffered from the following impairments: hernia, bipolar disorder, ADHD, anxiety; panic disorder with agoraphobia, cervical and lumbar spine degenerative disc disease, arthritis, asthma, torn meniscus, and Raynaud's phenomenon. (Tr. 154, 170.) However, it is not necessary to discuss Plaintiff's medical records in detail because the primary issue in Plaintiff's appeal is the legal standard applied by the ALJ. (Doc. 14, at 7-8.) Thus my review of the administrative record is limited to Plaintiff's first application for SSI and DIB.

ALJ Adamczyk issued the opinion on Plaintiff's first claim for SSI and DIB on June 22, 2011. (Tr. 137-47.) Following the five step analysis, the ALJ found Plaintiff was not disabled under the Act. At Step One, the ALJ found that Plaintiff met the insured status requirements through September 30, 2014, and had engaged in substantial gainful activity since the alleged onset date of July 19, 2006. (Tr. 139.) At Step Two, the ALJ found Plaintiff had the following severe impairments: "cervical and lumbar spine degenerative disc disease, arthritis, asthma, attention deficit hyperactive disorder (ADHD), bipolar disorder and an anxiety disorder and a history of substance abuse in full and complete remission." (*Id.*) At Step Three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 18.) The ALJ then found that Downs had the RFC to perform "a restricted range of sedentary work." The ALJ added that:

> He need (sic) the opportunity for a sit/stand option; with no operation of foot controls; no climbing of ladders, ropes or scaffolds; and occasional climbing of ramps or stairs. The claimant is limited to jobs that do not require kneeling, crouching or crawling; no repetitive flexion, or extension of the neck; no overhead reaching; no exposure to extremes of cold, heat or humidity or concentrated

> environmental irritants such as fumes, odors, dust and gases. The claimant must also avoid the use of moving machinery and unprotected heights. He [sic] is limited to simple, routine, repetitive work with a low stress environment, i.e. no decision making or changes in the work setting and no pace work or production rate and no working with the general public and only occasional interaction with co-workers and supervisors.

(Tr. 140.) At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 146.) At Step Five, the ALJ found that a significant number of jobs existed which Downs could perform despite her limitations. (*Id.*) She also found that Plaintiff was thirty-four and therefore a younger individual (age 18-44) as of the alleged onset date. (*Id.*) As a result, the ALJ found Plaintiff is not disabled under the Act. (Tr. 147.) Plaintiff voluntarily withdrew her appeal on June 21, 2012. (Tr. 251.)

    **F.    Governing Law**

In the Sixth Circuit, a prior decision by the Commissioner can preclude relitigation in subsequent cases.

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 SSR LEXIS 5, at *9, 1998 WL 283902, at *3 (acquiescing to *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). The regulations also explicitly invoke *res judicata*: An ALJ can dismiss a hearing where "res judicata applied in that we have a previous [final] determination or decision under this subpart about your rights." 20 C.F.R. §§ 404.957, 416.1457. Collateral estoppel is the branch of *res judicata* applied in this context. As the Third

Circuit explained, *res judicata* formally "consists of two preclusion concepts: issue preclusion and claim preclusion." *Purter v. Heckler*, 771 F.2d 682, 689 n.5 (3d 1985); *see also Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) (Posner, J.) (discussing the "collateral estoppel branch of res judicata" in social security cases). Claim preclusion prevents renewing a judgment on the same cause of action; issue preclusion, or collateral estoppel is less expansive: "foreclosing relitigation on all matters that were actually and necessarily determined in a prior suit." *Purter*, 771 F.2d at 689 n.5.

The *res judicata* effect of past ALJ decisions is actually a form of collateral estoppel precluding reconsideration of discrete factual findings and issues. *See Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005) ("This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review."). The Commissioner's internal guide explains the different issues and factual findings precluded by *res judicata* under *Drummond*. *Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual*, § I-5-4-62, 1999 WL 33615029, at *8-9 (Dec. 30, 1999). These include the RFC and various other findings along the sequential evaluation process, such as "whether a claimant's work activity constitutes substantial gainful activity," whether she has a severe impairment or combination of impairments, or whether she meets or equals a listing. *Id.*

Evidence of "changed circumstances" after the prior decision allows the ALJ to make new findings concerning the unadjudicated period without disturbing the earlier decision. *See Bailey ex rel. Bailey v. Astrue*, No, 10-262, 2011 U.S. Dist. LEXIS 110437, 2011 WL 4478943, at *3 (E.D. Ky. Sept. 26, 2011) (citing *Drummond*, 126 F.3d at 842-43). In other

words, even though the first ALJ did not make any findings concerning later periods, her decision still applies to those periods absent the requisite proof. Thus, as applied in this Circuit, the AR 98-4(6) and *Drummond* essentially create a presumption that the facts found in a prior ruling remain true in a subsequent unadjudicated period unless "there is new and material evidence" on the finding. *See Makinson v. Colvin*, No. 5: 12CV2643, 2013 U.S. Dist. LEXIS 110513, 2013 WL 4012773, at *5 (N.D. Ohio Aug. 6, 2013) (adopting Report & Recommendation) ("[U]nder *Drummond* and AR 98-4(6), a change in the period of disability alleged does not preclude the application of *res judicata*." (citing *Slick v. Comm'r of Soc. Sec.*, No. 07-13521, 2009 U.S. Dist. LEXIS 3653, 2009 WL 136890, at *4 (E.D. Mich. Jan. 16, 2009))); *cf. Randolph v. Astrue*, 291 F. App'x 979, 981 (11th Cir. 2008) (characterizing the Sixth Circuit's rule as creating a presumption); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985))).

In *Drummond*, for example, the court held that the first ALJ's RFC applied to a subsequent period unless the circumstances had changed. 126 F.3d at 843; *see also Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) (noting that in order to win benefits for a period after a previous denial, the claimant "must demonstrate that her condition has so worsened in comparison to her condition [as of the previous denial] that she was unable to perform substantial gainful activity"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993) (same). The Sixth Circuit made this clear in *Haun v.*

*Commissioner of Social Security*, rejecting the argument that *Drummond* allowed a second ALJ to examine *de novo* the unadjudicated period following the first denial. 107 F. App'x 462, 464 (6th Cir. 2004).

To overcome the presumption that the claimant remains able to work in a subsequent period, the claimant must proffer new and material evidence that her health declined. The Sixth Circuit has consistently anchored the analysis on the comparison between "circumstances existing at the time of the prior decision and circumstances existing at the time of the review . . . ." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). In a case predating *Drummond*, the court explained. "[W]hen a plaintiff previously has been adjudicated not disabled, she must show that her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey*, 987 F.2d at 1232-33. Later, it reiterated, "In order to be awarded benefits for her condition since [the previous denial], Priest must demonstrate that her condition has . . . worsened in comparison to her [previous] condition . . . ." *Priest*, 3 F. App'x at 276. The ALJ must scan the medical evidence "with an eye toward finding some change from the previous ALJ decision . . . ." *Blackburn v. Comm'r of Soc. Sec.*, No. 4:1-cv-58, 2012 U.S. Dist. LEXIS 183493, 2012 WL 6764068, at \*5 (E.D. Tenn. Nov. 14, 2012), *Report & Recommendation adopted by* 2013 U.S. Dist. LEXIS 550, 2013 WL 53980, at \*1 (Jan. 2, 2013). That is, the evidence must not only be new and material, but also must show deterioration. *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 U.S. Dist. LEXIS 115925, 2011 WL 4502988, at \*8 (E.D. Mich. July 12, 2011), *Report & Recommendation adopted by* 2011 U.S. Dist. LEXIS 110609, 2011 WL 4502955, at \*4 (Sept. 28, 2011). In *Drogowski*, for example, the court rejected the plaintiff's argument that a report met this test

simply because it was not before the first ALJ. 2011 WL 4502988 at *2, 8-9. These decisions make clear that the relevant change in circumstances is not a change in the availability of evidence but a change in Plaintiff's condition.

*Res judicata* is not a complete bar on reconsidering prior decisions or determinations: the regulations provide two mechanisms for such reexamination that escape the doctrine's effects. *Purter*, 771 F.2d at 691-93 (discussing reopening as an exception to claim preclusion). The first, less important to *res judicata* case law, occurs just after the initial determination, when the claimant's first step in the review process is sometimes a request for "reconsideration" of that decision. 20 C.F.R. §§ 404.907, 416.1407.

The more critical and complicated mechanism is reopening a prior ALJ decision. The regulations allow the Commissioner, through an ALJ or Appeals Council, to peel back the determination or decision and revise it. 20 C.F.R. §§ 404.987, 404.992, 416.1487, 416.1492. The claimant or the Commissioner can initiate the process. *Id.* The reopening of a determination or decision can occur "for any reason" within twelve months of the notice of the initial determination, but "good cause" must exist if the reopening occurs within two years of the initial determination for SSI claims and four years for DIB claims. *Id.* §§ 404.988, 416.1488. A DIB claim can also be reopened at any time under a few scenarios not relevant to the instant case. *Id.* § 404.988(c). Good cause exists, among other reasons, if "[n]ew and material evidence is furnished" for either type of claim, SSI or DIB. *Id.* §§ 404.989, 416.1489. If a determination or decision is reopened, *res judicata* does not apply. *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002).

The decision whether to reopen, unless it implicates a colorable constitutional issue, evades judicial review: courts can only review the Commissioner's final decisions made after a hearing. 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977) (holding that Commissioner's decision not to reopen is unreviewable). A decision not to reopen does not meet those requirements. However, courts can review the case "to determine whether *res judicata* has been properly applied to bar the pending claim or whether, even though *res judicata* might properly have been applied, the prior claim has nevertheless been reopened." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999); *see also Kaszer,* 40 F. App'x at 690 ("But 'we will examine the record to determine whether or not a reopening has occurred.'" (quoting *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987))). Implicit reopenings occur, with unfortunate frequency, where the ALJ does not explicitly reopen the case, but crafts a decision that appears to constructively do so. *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 358 (6th Cir. 2013). As the Sixth Circuit lamented,

> If an ALJ intends to reopen prior decisions, he or she should say so, say why, and cite the appropriate regulation that permits reopening. If an ALJ intends instead to adjudicate only the subsequent period in light of changed circumstances, he or she should make this approach clear and cite the appropriate cases and acquiescence rulings. Regardless of which path the ALJs take, they must clearly state their approach.

*Id*. The ALJ's decision there was too muddled to determine whether it worked a reopening, and consequently the court remanded. *Id.* at 358-59; *see also Haddix v. Astrue*, No. 10-30, 2010 U.S. Dist. LEXIS 120887, 2010 WL 4683766, at *1-4 (E.D. Ky. Nov. 12, 2010) (remanding where ALJ's decision was unclear).

12

Constructive reopenings are found where the ALJ reviewed the entire record including the portions from the already adjudicated period, and decided "the merits of the claim." *Tobak*, 195 F.3d at 186. Thus, the Sixth Circuit found a reopening where the ALJ considered the entire period "in light of the new evidence . . . ." *Wilson v. Califano*, 580 F.2d 208, 212 (6th Cir. 1978). An additional factor that could lead to finding an implicit reopening is the ALJ's failure to discuss the prior determination or the *res judicata* doctrine. *See Martin v. Comm'r of Soc. Sec.*, 82 F. App'x 453, 455 (6th Cir. 2003); *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620 (6th Cir. 1987). Nonetheless, an ALJ's review of old or new evidence does not necessarily signify a constructive reopening, for such a review would be required to decide against reopening as well as for it. *See Girard v. Chater*, 918 F. Supp. 42, 44-45 (D.R.I. 1996). The ALJ's discussion of new evidence likewise might relate to her independent determination of whether to grant benefits in the unadjudicated period, again indicated no reopening occurred. *See id.* at 44.

The ability to reopen, it must be recalled, is a power the regulations grant, thus whether it is done explicitly or implicitly it must meet certain requirements. 20 C.F.R. §§ 404.987-404.996, 416.1487-416.1494. Chief among these is the two year (SSI) and four year (DBI) time limits for good cause reopenings. *Id.* §§ 404.988, 416.1488. Consequently, an ALJ is powerless to reopen a claim outside these periods and constructive reopenings beyond them are barred. *See Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004) ("The concept of constructive reopening cannot extend beyond the scope of authority granted under the regulations. Because more than four years had passed since the denial of the original

13

application, the Commissioner could not have constructively reopened Glazer's case." (citations omitted)).

### G. Analysis

The parties agree that ALJ Detherage erred by finding that the alleged onset date was April 30, 2007 instead of the amended onset date of June 23, 2011. (Doc. 14, at 8; Doc. 15, at 6.) They further agree that under *Drummond* the first ALJ's decision is *res judicata* as to the issue of whether Plaintiff was disabled as of June 22, 2011, the date of decision on Plaintiff's first application. 126 F.3d at 842-43; (Tr. 134; Doc. 14, at 9; Doc. 15, at 6.)

Defendant argues that this error is harmless "because the prior decision established that [P]laintiff was not disabled, and Plaintiff has not demonstrated that she was prejudiced." (Doc. 15, at 6.) Defendant cites *Ehrob v. Commissioner of Social Security*, which held that "an error in the alleged onset of disability is not itself a basis for remand, unless the Plaintiff can show that it caused her prejudice, either alone or in combination with other errors." No. 309-13732, 2011 U.S. Dist. LEXIS 27574, 2011 WL 977514, at *6 (E.D. Mich. Mar. 17, 2011). Plaintiff argues that she was prejudiced by the use of the erroneous onset date because the ALJ "essentially retried the earlier case." (Doc. 16, at 3.)

To decide this issue it is necessary to consider the three methods of analysis that the ALJ could have used to address Plaintiff's claim. First, the ALJ could have decided that *res judicata* barred consideration of the second application. As the parties have agreed, the ALJ clearly did not apply *res judicata* here. (Doc. 14, at 9; Doc. 15, at 6.) Although he acknowledged the doctrine, the ALJ did not adopt the previous ALJ's holdings. (Tr. 10). He

conducted his own thorough review of the record, and found, among other things, severe impairments and an RFC that differed from the 2011 decision.[1] (Tr. 13, 15, 139-40.)

Second, the ALJ could have decided that changed circumstances, or new and material evidence, did exist, which would permit the ALJ to consider the merits of plaintiff's claim from June 23, 2011. *See Drummond*, 126 F.3d at 842-43. The parties agree that this is the standard the ALJ should have adopted. (Doc. 14, at 9; Doc. 15, at 6.) ALJ Detherage's holdings on the merits of each claim would be appropriate under a changed circumstance analysis. (Tr. 13, 15-22.) It would also be appropriate for him to review the previous ALJ's decision and medical records prior to June 23, 2011. *Kennedy*, 247 F. App'x at 768 (6th Cir. 2007.) The ALJ would not review the case *de novo*, but would determine whether Plaintiff's "condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey*, 987 F.2d at 1232-33. *Res judicata* would apply to the previously adjudicated, and those findings would remain undisturbed. *Bailey*, 2011 WL 4478943, at *2. ALJ Detherage initially appeared to adopt this approach in his opinion by stating that Plaintiff's impairments had not significantly changed since the prior decision. (Tr. 10.) However, he does not discuss or support this finding in his decision and he disturbed the

---

[1] Specifically, the 2013 decision differed from the 2011 decision by not including arthritis and "a history of substance abuse in full and complete remission" as severe impairments. *Compare* (Tr. 13) *with* (Tr. 139). The RFC differed by including two additional restrictions. *Compare* (Tr. 15.) *with* (Tr. 140). First, that Plaintiff "not be off task more than 9% of the work period" and second that Plaintiff "is likely to be absent from work one day per month." (Tr. 15.)

previously adjudicated period by adopting an onset date clearly covered by the first decision.[2] (Tr. 10-24). Thus it is clear that he did not apply the changed circumstances approach.

Third, the ALJ could have constructively reopened Plaintiff's first application by reviewing it on the merits. *See Tobak*, 195 F.3d at 186. This appears to be the method of analysis adopted here. As previously discussed, to reopen Plaintiff's claim the ALJ would need to find good cause, such as the production of new and material evidence. 20 C.F.R. §§ 404.989, 416.1489. Although ALJ Detherage did not make an explicit finding of good cause, his review of the evidence generated after June 22, 2011, his failure to discuss the prior determination or the *res judicata* doctrine, and his findings on the merits of the previously adjudicated period[3] indicate that he implicitly reopened plaintiff's first application. *See Tobak*, 195 F.3d at 186; *Wilson*, 580 F.2d at 212; *Martin*, 82 F. App'x at 455; *Crady*, 835 F.2d at 620. Therefore, I find that the ALJ constructively reopened Plaintiff's first application.

The Court must next consider whether Plaintiff was prejudiced by the ALJ's decision to reopen her claim and adopt an alleged onset date of April 30, 2007. As noted above, Defendant argues that "the ALJ's error is harmless because the prior decision established that Plaintiff was not disabled and Plaintiff has not demonstrated that she was prejudiced by the ALJ's

---

[2] As discussed below the ALJ's statement regarding changed circumstances is also contradicted by the ALJ's implicit decision to open the first application because of new and material evidence.

[3] I note that the April 30, 2007 onset date, used by ALJ Detherage, differs from the July 19, 2006 onset date adopted in the first application. (Tr. 12, 139.) This does not appear to be an issue to a finding that ALJ Detherage reopened Plaintiff's first application because ALJ Detherage's decision clearly encompassed a period that was previously adjudicated. Moreover, the first ALJ found that Plaintiff "did not submit any medical documentation for any treatment and diagnostic testing for . . . the year 2006." (Tr. 145.) There is also no indication in the record, or in the first ALJ's decision, that Plaintiff submitted medical records prior to April 30, 2007. (Tr.139-47, 343-769.)

selection of the April 2007 onset date." (Doc. 15, at 6 (citing *Ehrob*, 2011 WL 977514, at *6).) I find that Plaintiff has submitted sufficient evidence of prejudice to justify remand. As Plaintiff points out her situation can be distinguished from that in *Ehrob*. (Doc. 16, at 4.) In *Ehrob*, the onset date used by the ALJ was uncertain. 2011 WL 977514, at *6. However, the Court found no prejudice because the ALJ did not rely on any of the prejudicial medical records that predated Plaintiff's alleged onset date. Id. Here, ALJ Detherage thoroughly reviewed the entire medical record beginning in April 30, 2007. (Tr. 15-22.) He relied on medical evidence generated prior to June 23, 2011 when considering Plaintiff's allegations of back pain, (Tr. 16); chronic neck pain, (Tr. 16-17); left knee pain, (Tr. 17-18); asthma, (Tr. 18); anxiety, and depression. (Tr. 20.) He also considered previously generated evidence in assessing Plaintiff's work history. (Tr. 21.) He found that her employment in 2008, 2009, 2010, and 2011 suggested that her "abilities are somewhat greater than that to which [she] testified . . . [and] that [her impairments] would not currently prevent work." (*Id.*) Plaintiff's situation more closely resembles that in *Hinchey v. Barnhart*, 2007 U.S. Dist. LEXIS 25168, 2007 WL 1047065, at *6 (W.D. Va. 2007). In *Hinchey*, the court found that the plaintiff was prejudiced because the ALJ considered work activities that otherwise would not have been part of the record, and his overall analysis of Plaintiff's claim was tainted by the use of an onset date six years prior to the alleged date. *Id.* The court noted that "an ALJ's determination of an individual's functional capacity is, by its very nature, multi-dimensional. . . . As the agency's regulations note, a full and fair consideration of functionality requires a look longitudinally at multiple factors, including duration, intensity, frequency and type of physical activity." *Id.*

Here, Plaintiff's claim was not fully and fairly considered because the ALJ used an onset date almost four years prior to the alleged date.

Plaintiff's argument is unusual. One could more easily argue that the thorough and comprehensive decision by ALJ Detherage in fact benefited Plaintiff, giving her a far more in-depth review than the limited examination for changed circumstances that she now seeks. Moreover, the ALJ may consider prior medical records in determining whether changed circumstances do exist, thus a review under the analysis of changed circumstances may not overly differ from the one that is before the Court today. However, this is mere speculation and conjecture and the Court will not rest its decision on it. *See Haddix*, 2010 WL 4683766, at *1. As Plaintiff points out, the key difference between an analysis that reopens the first application and one that examines the evidence for changed circumstances is that in the latter the ALJ must make some comparison of Plaintiff's condition and circumstances as they were at the time of the 2011 decision to her condition and circumstances at the time of the 2013 decision. (Doc. 14, at 8); *see* Priest, 3 F. App'x at 276; *Blackburn*, 2012 WL 6764068, at *5. Here the ALJ's review of the record is comprehensive. He does not distinguish between a 2011 Plaintiff and a 2013 Plaintiff in search of worsened circumstances but examines the entire period as one continuous application. (*See* tr. 15-22.)

In light of the ALJ's use of a grossly erroneous onset date, and his failure to analyze Plaintiff's claim under a changed circumstances approach, I suggest that Plaintiff has demonstrated sufficient prejudice to warrant remand for reconsideration under a changed circumstances standard. I also suggest that meaningful review of Plaintiff's claim that the ALJ

18

failed to give appropriate weight to the Plaintiff's treating physicians is not possible because of the erroneous legal standard applied by the ALJ.

### H. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Downs' Motion for Summary Judgment (Doc. 14) be **GRANTED**, the Commissioner's Motion (Doc. 15) be **DENIED**, and that this case be **REMANDED** for administrative reconsideration.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it

pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date: January 28, 2016               S/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: January 28, 2016               By s/Kristen Krawczyk
                                     Case Manager to Magistrate Judge Morris